1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FORREST MOYER, a Conserved
Individual, by and through his Guardian
Ad Litem, Lynn Moyer,

             Plaintiff,

      vs.

LONG BEACH UNIFIED SCHOOL
DISTRICT, a Local Education Agency,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 09-04430 MMM (AJWx)


FINDINGS OF FACT AND
CONCLUSIONS OF LAW

Forrest Moyer appeals an administrative ruling regarding the adequacy of public educational services that the Long Beach Unified School District (the "District" or "LBUSD") provided under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq.  Moyer filed a first Request for Due Process Hearing on September 24, 2008 and a second request, raising additional claims, on November 25, 2008.[1]  The two cases were consolidated, and the parties participated in an administrative hearing in 2009.  The hearing addressed five issues: (1) whether the two-year statute of limitations barred Moyer's claims that he was denied a free and

[1]Administrative Record ("AR") 1842–51; 2015–25.

appropriate public education ("FAPE") for the 2003–2004 school year through September 24, 2006 (two years prior to the filing of case one) because his parents should have been provided with a notice of procedural safeguards; (2) whether Moyer was denied a FAPE for the 2003–2004 school year through September 24, 2006 because his parents were not provided a notice of procedural safeguards; (3) whether Moyer was denied a FAPE for the 2003–2004 school year through September 24, 2006 because the District should have assessed him and found him eligible for special education pursuant to its "Child Find" obligation; (4) whether Moyer was denied a FAPE from September 24, 2006 through November 24, 2008 (the date of the filing of case two) because he was not provided with a notice of procedural safeguards; (5) whether Moyer was denied a FAPE from September 24, 2006 through November 24, 2008 because the District should have assessed him and found him eligible for special education pursuant to its "Child Find" obligation.[2]

On March 26, 2009, Office of Administrative Hearings Administrative Law Judge ("ALJ") Richard T. Breen issued a decision in favor of the District.[3]  The ALJ found that Moyer's first three claims were barred by the relevant statute of limitations and that his subsequent claims were barred because he had not been found eligible for special education prior to turning nineteen years of age.[4]

On June 19, 2009, Moyer  appealed the ALJ's decision.[5]  While not disputing the ALJ's findings of fact, Moyer contends that the ALJ erred by not determining whether the District should

---

[2]AR 1852–65 (March 26, 2009 Decision of ALJ Breen).  Moyer also filed additional claims pursuant to the Americans with Disabilities Act, which the ALJ determined he did not have jurisdiction to hear.

[3]*Id.*

[4]AR 1861–64.

[5]Complaint, Docket No. 3 (June 23, 2009).  Moyer subsequently filed a first amended complaint on June 10, 2007.  (First Amended Complaint, Docket No. 27 (June 10, 2010)).  The court had previously granted the petition of plaintiff's mother, Lynn Moyer, to be appointed as his guardian ad litem.

have found him eligible for special education, which could potentially have provided a basis for tolling the statute of limitations and allowing him to be found eligible for special education beyond the age of nineteen. After Moyer filed his opening brief,[6] the District filed a responsive brief in which it sought attorneys' fees. The District contends plaintiff's appeal is frivolous, unreasonable, and without foundation.[7]

## I. FINDINGS OF FACT

### A.     Moyer's Educational History

1.     Moyer was born on September 25, 1986, and was twenty-two years old at the time of the administrative hearing.[8]  At that time, Moyer's mother, Lynn Moyer, had been appointed as his conservator;[9] she has been appointed his *guardian ad litem* for purposes of this litigation.[10]  Lynn Moyer is a practicing attorney, although she has no experience or training in special education law.[11]

2.     Attending private religious schools, Moyer progressed academically through elementary school and junior high without incident, successfully completing the ninth grade in spring 2002 and regularly participating in sports.[12]  During elementary school, Moyer was referred to the District for speech therapy.[13]  In connection with his assessment by the

---

[6]Plaintiff's Opening Brief ("Brief"), Docket No. 25 (May 28, 2010). See also Plaintiff's Reply Brief ("Reply"), Docket No. 32 (July 16, 2010).

[7]Defendant's Response Brief ("Response"), Docket No. 29 (June 25, 2010).

[8]AR 1495

[9]AR 1853.

[10]Order, Docket No. 2 (June 23, 2009).

[11]AR 38–40.

[12]AR 675–76.

[13]AR 53, 118–120.

District, Moyer's mother received a notice of parental rights and procedural safeguards in February 1995.[14]

3.  Moyer suffered a series of head traumas while growing up, however.[15]  In particular, he became unconscious following a collision during a football game in fall 2001, as well as after a fall from a bicycle stunt around that same time.[16]  In January 2002, Moyer was again knocked unconscious in a snowboarding accident.[17]

4.  In the summer of 2002, just after finishing ninth grade, Moyer began exhibiting signs of short-term memory loss and strange behavior.[18]  His parents testified that he did not appear interested in activities, became increasingly disorganized, and appeared confused during sports at which he had previously excelled.[19]  A family friend testified that Moyer was a different child from the one he had known over the years.[20]  Believing that perhaps he had become involved with drugs, Moyer's parents gave him over-the-counter tests for illegal drugs.  The results were negative.[21]

5.  In June 2002, Moyer enrolled at Wilson High School in the LBUSD for the tenth grade.[22]  At all relevant times, Moyer's parents resided within the boundaries of the District.[23]

6.  Just prior to the start of fall classes, Moyer suffered a seizure and was taken to the hospital

[14]AR 1027–29; 1493–99;

[15]AR 53–62.

[16]AR 55–56.

[17]AR 59.

[18]AR 124–25.

[19]AR 66–69; 124–28;  AR 1854–55.

[20]AR 1342.

[21]AR 696–97.

[22]AR 46–48.

[23]AR 1853–54.

by his parents where he was treated with anti-psychotic drugs.[24]  In September 2002, after starting classes at Wilson, he was taken to the school nurse's office after apparently exhibiting strange behavior that included eating bark from a tree.[25]  Subsequently, Moyer was diagnosed as having a mood or bipolar disorder, and received four weeks of home hospital services.[26]  The District was advised of this hospitalization, and provided home instruction while Moyer underwent outpatient psychiatric care.[27]  A physician's report indicated that Moyer could return to school without restrictions after October 28, 2002.[28]

7.    After four weeks outpatient care, Moyer returned to school and completed the 2002 fall semester.  Concerned that his grades were slipping, Moyer's mother met with school officials on February 26, 2003 to discuss his bipolar disorder and ways to improve his grades.[29]  Although the District staff members who testified at the hearing did not recall much about Moyer, the meeting did result in the drafting of a "Section 504 Accommodation Plan."[30]  The plan identified four accommodations for Moyer's bipolar disorder: (1) teachers would recognize his symptoms and call a counselor or nurse if he needed help; (2) Moyer and the teachers would keep a daily homework plan; (3) teachers would call home if Moyer was having difficulty in class; and (4) teachers would provide more time for class work if needed.[31]

8.    In March 2003, Moyer took the California High School Exit Exam, passing the

---

[24]AR 682–83, AR 1855.

[25]AR 70–71.

[26]AR 198–99.

[27]AR 1521–27.

[28]AR 1521.

[29]AR 1529.

[30]AR 1529, 1856.

[31]AR 1529.

mathematics section but failing the English-language arts dection.[32]  Moyer received the following grades upon completion of the spring 2003 semester at Wilson: "A" in soccer; "B-" in surfing; "C" in art and English; "D" in history and algebra; and "F" in biology.[33]

9.  In June 2003, Moyer's physician sent the District a "Physical Examination Report," indicating that Moyer could participate in all sports.  The report stated that Moyer was being treated with medication for a "mood disorder."[34]  Moyer's parents also spoke with district staff about his bipolar disorder.[35]

10.  During the fall 2003 semester, Moyer's parents noticed that he was continuing to have trouble completing his homework.[36]  Moyer also repeatedly called his mother because he was getting lost while at school.[37]  A second Section 504 Accommodation meeting was held on October 2, 2003.[38]  At the meeting, district staff indicated that Moyer was falling asleep in class, was refusing to do his work, and was leaving class without permission.[39]  The Accommodation Plan that was drafted provided that: (1) the school would inform Moyer's parent's of unusual behavior; (2) Moyer's counselor would inform the staff of his disorder; (3) staff would allow Moyer to see the counselor, psychologist, or nurse if he became confused at school; (4) Moyer and his parents would ensure that he took his medication consistently; (5) teachers would review Moyer's assignments with him; (6) teachers would send Moyer to the counselor for tardiness; (7) teachers would allow Moyer to make up

---

[32]1530–31.

[33]AR 1542–43; 1857.

[34]AR 1537–38.

[35]AR 887–903.

[36]AR 887–81.

[37]AR 908–910.

[38]AR 908.

[39]AR 904.

work missed; (8) they would give him extended time for assignments and tests; (9) they would break assignments into smaller parts; and (10) they would notify his parents if Moyer had trouble completing assignments so he could complete them at home.[40]

11. A month after this meeting, Moyer's quarterly report card indicated that he was getting a "B" in Spanish, but was failing geometry and English. He received a "D" in science, and received no credit for surfing.[41] Moyer's mother discussed her concerns about these grades with Moyer's doctors, and they recommended that he be placed in a residential program that specialized in helping children with mental health problems.[42]

12. On November 6, 2003, Moyer's parents enrolled him at the Logan River Academy in Utah.[43] On November 10, 2003, Moyer's mother responded to an email from his English teacher at Wilson about missed assignments, and notified the teacher that Moyer had been placed in a boarding school.[44] The email stated that Moyer had not been "getting the appropriate education he was entitled to" at Wilson.[45]

13. Moyer attended the Logan River Academy until August 2004, just before he turned eighteen.[46] He sporadically attended Long Beach School for Adults beginning in spring 2005, where he enrolled as a regular adult seeking a high school diploma.[47] Moyer turned nineteen on September 25, 2005. At the time of the hearing, he had not received a high

---

[40]AR 1545–46.

[41]AR 929–30; 1542–43; AR 1858.

[42]AR 932–33.

[43]AR 1552.

[44]AR 1544.

[45]Id.

[46]AR 47–48.

[47]AR 50–52, 1597–1604.

school diploma and was residing at the Casa Colina Brain Institute.[48]

14.    At no time following the conclusion of Moyer's speech therapy during elementary school did district personnel recommend Moyer for a special education assessment, provide a special education assessment plan, or give Moyer's parents notice of their rights or procedural safeguards under the IDEA.[49]  Indeed, multiple district personnel testified that Moyer was never referred for a special education assessment.[50]  For their part, Moyer's parents did not request a special education assessment or a notice of procedural safeguards.[51]

**B.    The Administrative Hearing**

15.    The ALJ heard testimony from more than twenty witnesses over seven days in February and March 2009.[52]  In response to questions about records, files, or emails concerning Moyer that had not been produced, a counselor at Long Beach School for Adults testified that he deleted old emails on a monthly basis.[53]  Moyer's former biology teacher at Wilson High School testified that she had a single grade file on her computer that included Moyer's name and grade; she could not recall having him as a student and had no other records pertaining to him.[54]  The biology teacher testified that she had been contacted by the District to determine if she had any files related to Moyer.[55]  Moyer contends that

[48]AR 986–87.

[49]AR 931, 952, 1023–27, 1860–61.

[50]AR 358, 384, 422–23, 448, 589, 1232–33.

[51]AR 931, 1287–92  When asked if anyone at the District ever suggested that Moyer be given a special education assessment, his mother testified: "No.  I thought that's what we were getting with this 504.  I didn't know that he was entitled to more."  (AR 931).

[52]AR 1852.

[53]AR 1084.

[54]AR 1255–58.

[55]*Id.*

8

neither the grade file nor any emails were produced.[56]  District representative Phyliss Arkus testified, however, that all of the records the District had in its possession related to Moyer at the time of the hearing had been produced; she noted that requested nursing documents had previously been destroyed.[57]

16.   In his findings of fact and conclusions of law,[58] the ALJ found that Moyer's parents concluded he was not receiving an adequate education from the District as of November 4, 2003 when they removed him from Wilson High School.[59]  He determined that the statute of limitations on any claim for denial of a FAPE began to run at that time.[60]  The ALJ also found that the District had not withheld any required documents or information from the Moyers; specifically, he stated that Moyer "did not present evidence that there was any other information that should have been, but was not, provided by [the] District."[61]   Accordingly, he concluded that no exception to the two-year statute of limitations applied and that Moyer's claims for denial of a FAPE prior to September 24, 2006 were time-barred.[62]

17.   The ALJ further concluded that Moyer had not been found to be eligible for special education prior to his nineteenth birthday.[63]  Concluding that a person is not eligible for special education services past the age of nineteen if he has not previously been found to be eligible, the ALJ determined that Moyer's claims regarding denial of a FAPE after

---

[56]Brief at 8.

[57]AR 1458–59.

[58]AR 1852–64.

[59]AR 1862.  Moyer does not contest this central factual finding, although he contends that specific tolling provisions apply.  (Brief at 11).

[60]*Id.*

[61]*Id.*

[62]AR 1863.

[63]AR 1863–64.

1  September 24, 2006 failed as a matter of law because he turned nineteen prior to that

2  time.[64]

3  18.   Any findings of fact that are deemed to be conclusions of law are incorporated as such.

## II.  CONCLUSIONS OF LAW

### A.    Standard of Review

1.   This action is brought pursuant to 20 U.S.C. § 1415(i)(2)(A), which provides that a party aggrieved by the findings and decision of a due process hearing conducted by a State educational agency has a right to bring a civil action in either state or district court. Section 1415(i)(2)(B) provides:

"In any action brought under this paragraph, the court –

(i)     shall receive the records of the administrative proceedings;

(ii)    shall hear additional evidence at the request of a party; and

(iii)   basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(B).

2.   The court reviews the decision of the hearing officer *de novo*, according due weight to the hearing officer's judgments regarding education policy.  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-72 (9th Cir. 1993).  See also *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982) ("[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review"); *Adams v. State of Oregon*, 195 F.3d 1141, 1145 (9th Cir. 1999) (recognizing that a court should give "due weight to the hearing officer's administrative proceedings"); *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("The district court's independent judgment is not controlled by the hearing officer's recommendations, but neither may it be made

_____

[64]AR 1864.

1  without due deference" to them because this is what Congress intended in enacting 20

2  U.S.C. § 1415); *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)

3  ("How much deference to give state educational agencies . . . is a matter for the discretion

4  of the courts"). A court must be particularly deferential to a hearing officer's findings

5  where they are "thorough and careful," *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524

6  (9th Cir. 1994), or where they "are based on credibility determinations of live witness

7  testimony." *J.S. v. Shoreline Sch. Dist.*, 220 F.Supp.2d 1175, 1184 (W.D. Wash. 2002)

8  (citing *Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.*, 267 F.3d 877, 887–89 (9th

9  Cir. 2001).

10  3.  At the administrative hearing, the party seeking relief has the burden of proving that the

11  school district failed to comply with the IDEA. *Schaffer ex rel. Schaffer v. Weast*, 546

12  U.S. 49, 62 (2005) ("The burden of proof in an administrative hearing challenging an IEP

13  is properly placed upon the party seeking relief"). On review in district court, the burden

14  of proof is on the party challenging the administrative ruling. *L.M. ex rel. Sam M. v.*

15  *Capistrano Unified Sch. Dist.*, 538 F.3d 1261, 1269 (9th Cir. 2008) ("In an action for

16  judicial review of an administrative decision, the burden of persuasion rests with the party

17  challenging the ALJ's decision," citing *Clyde K.*, 35 F.3d at 1399).

18  4.  "In matters alleging a procedural violation, a hearing officer may find that a child did not

19  receive a free appropriate public education only if the procedural inadequacies –

20  (I) impeded the child's right to a free appropriate public education;

21  (II) significantly impeded the parents' opportunity to participate in the

22  decisionmaking process regarding the provision of a free appropriate public

23  education to the parents' child; or

24  (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415 (f)(3)(E)(ii).

25  See also *R.B., ex rel. F.B. v. Napa Valley Unified School Dist.*, 496 F.3d 932, 937 (9th

26  Cir. 2007) ("A child is denied a FAPE only when the procedural violation 'result[s] in the

27  loss of educational opportunity or seriously infringe[s] the parents' opportunity to

28  participate in the IEP formation process,'" quoting *W.G. v. Bd. of Trustees of Target*

1   *Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992)).

2   **B.      Whether Moyer's Claims Concerning Denial of a FAPE Prior to September 24,**

3   **2006 Are Time-Barred**

4   5.   Congress enacted the IDEA "to ensure that all children with disabilities have available to

5   them a free appropriate public education that emphasizes special education and related

6   services designed to meet their unique needs and prepare them for further

7   education. . . ."[65]  20 U.S.C. § 1400(d)(1)(A).  Under the IDEA, all states that receive

8   federal educational funding must establish policies and procedures to ensure that "a free

9   appropriate public education is available to all children with disabilities residing in the

10  State."  20 U.S.C. § 1412(a)(1)(A).

11  6.   A school district's obligations under the IDEA include implementation of a "Child Find"

12  program, which "requires the State to design a program to identify and provide services

13  to children with special educational needs." *Miller ex rel. Miller v. San Mateo-Foster City*

14  *Unified Sch. Dist.*, 318 F.Supp.2d 851, 853 (N.D. Cal. 2004) (citing 20 U.S.C.

15  § 1412(a)(3)).  If a student is determined to be eligible for special education services, the

16  school district must design an Individualized Education Program ("IEP") for that student.

17  20 U.S.C. § 1414(d).  "If parents disagree with a school district regarding 'any matter

18  relating to the identification, evaluation, or educational placement of the child, or the

19  provision of a free appropriate public education to such child,' they are entitled to an

20  impartial due process hearing before a state agency." *E.M. v. Pajaro Valley Unified Sch.*

---

22  [65]IDEA defines "free appropriate public education" for children with disabilities as:

23  "special education and related services that (A) have been provided at public
    expense, under public supervision and direction, and without charge; (B) meet the

24  standards of the State educational agency; (C) include an appropriate preschool,
    elementary school, or secondary school education in the State involved; and (D) are

25  provided in conformity with the individualized education program. . . ." 20 U.S.C.
    § 1401(9).

26  It defines "special education" as "specially designed instruction, at no cost to parents, to

27  meet the unique needs of a child with a disability, including (A) instruction conducted in the
    classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in

28  physical education."  20 U.S.C. § 1401(29).

*Dist.*, No. C 06-4694 JF, 2009 WL 2766704, *8 (N.D. Cal. Aug. 27, 2009) (quoting and citing 20 U.S.C. § 1415(b)(6)(A), (f)). If the parents disagree with the results of the administrative hearing before the state agency, an appeal may be filed in district court. 20 U.S.C. § 1415(i)(2)(A).

7.    California's implementation of the IDEA is codified at California Education Code §§ 56000 et seq. The Child Find activities and determinations concerning appropriate educational remedies are to be undertaken by local educational agencies or where applicable, the department of education. CAL. EDUC. CODE § 56301.

8.    A request for a due process hearing asserting a claim under the IDEA "shall be filed within two years from the date the party initiating the request knew or had reason to know of the facts underlying the basis for the request." CAL. EDUC. CODE §56505(*l*); see also 20 U.S.C. § 1415(f)(3)(C) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this part, in such time as the State law allows"). Because Child Find is part of the IDEA, a claim that a school district neglected its Child Find obligations is subject to the IDEA's two-year statute of limitations. See *P.P. v. West Chester Area Sch. Dist*, 557 F.Supp.2d 648, 665 (E.D. Pa. 2008) (applying the IDEA's two-year statute of limitations to alleged Child Find violations), aff'd as to IDEA rulings and rev'd as to the application of a different limitations period for § 504 claims, 585 F.3d 727, 735–37 (3d Cir. 2009); see also *Daniel S. v. Council Rock Sch. Dist.*, No. 06-3531, 2007 WL 3120014, *2 (E.D. Pa. Oct. 25, 2007) ("There is a two-year statute of limitations for the child find provisions under the IDEA," citing 20 U.S.C. § 1415(f)(3)(C)).

9.    Moyer's first three IDEA claims are based on the District's alleged failure to provide him a FAPE during the 2003–2004 school year and its alleged failure to satisfy its Child Find

obligations to him in 2003.[66]  The ALJ found that the statute of limitations on these claims began to run at the latest in November 2003 when Moyer's parents removed him from Wilson High School and enrolled him at Logan River Academy.[67]  This conclusion is fully supported by the email sent by Moyer's mother on November 10, 2003, which stated that he had not been "getting the appropriate education he was entitled to" at Wilson.  The email demonstrates her awareness of the facts forming the basis for these claims.[68]  See *James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 769 (6th Cir. 2000) (holding that the "initial claim accrued when the[ ] [parents] knew of the injury to their child [,] i.e., the inadequate education"); *Alexopulos v. Riles*, 784 F.2d 1408, 1411 (9th Cir.1986) (holding that "a cause of action generally accrues when a plaintiff learns of the injury which is the basis of his action," and applying this standard to claims brought under the predecessor statute to the IDEA, the Education of All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq. (1982)).

10.  Moyer does not dispute the ALJ's finding in this regard, nor does he contest the fact that IDEA claims are generally subject to a two-year statute of limitations under California law.[69]  Instead, he contends that the statute of limitations does not apply because the District failed to give his parents a notice of procedural safeguards detailing their rights under the IDEA.[70]  In setting a two-year limitations period for requesting a due process hearing, California Education Code § 56505(*l*) states that "the time period specified in this subdivision does not apply to a parent if the parent was prevented from requesting the due process hearing due to . . . [t]he withholding of information by the local educational

---

[66]Brief at 8–20.

[67]AR 1862.

[68]AR 1544.

[69]Brief at 11.

[70]*Id.* at 21–22.

agency from the parent that was required under this part to be provided to the parent."[71]
The California Education Code provides that a notice of procedural safeguards

"shall be given to the parents:

(A) Upon initial referral or parental request for assessment.

(B) Upon receipt of the first state complaint under Section 56500.2 in a school year.

(C) Upon receipt of the first due process hearing request under Section 56502 in a school year.

(D) When a decision is made to make a removal that constitutes a change of placement of an individual with exceptional needs because of a violation of a code of pupil conduct . . . .

(E) Upon request by a parent."  CAL. EDUC. CODE § 56301(d)(2).[72]

11.   Moyer has failed to adduce evidence that any of the circumstances outlined in § 56301(d)(2) occurred during the limitations period.  The evidence presented at the administrative hearing clearly established that during the relevant time period, Moyer was not referred for a special education assessment by district personnel, and that Moyer's

---

[71]Section 56505(*l*) also precludes applying the limitations period if the local educational agency made specific misrepresentations "that it had solved the problem forming the basis of the due process hearing request."  Moyer does not allege any such misrepresentation or contend that this second exception to the statute applies here.  These two statutory exceptions to the IDEA's two-year limitations period are exclusive, and bar any common law or equitable tolling of the limitations period.  See, e.g., *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 736 (3d Cir. 2009) ("[T]olling principles that affect the application of state statutes of limitations would presumably not affect the IDEA statute of limitations, with its express exceptions to the limitations period"); *J.L. v. Ambridge Area Sch. Dist.*, 622 F.Supp.2d 257, 269 (W.D. Pa. 2008) ("[T]he two exceptions specifically set forth in the statute are the exclusive exceptions to the statute of limitations . . .").

[72]Section 56301 was modified and expanded in 2005 and 2007 to reflect updates to 20 U.S.C. § 1415(d)(1), which outlines the IDEA's requirements for providing notice of procedural safeguards.  These changes are not relevant to the facts presented here.

parents did not request such an assessment.[73]  Further, Moyer's parents never requested a notice of procedural safeguards, and did not assert the present claims prior to September 24, 2008.  Accordingly, the District did not withhold a notice of procedural safeguards from Moyer's parents because no circumstances occurred that would have required that such notice be provided.  See *Firth v. Galeton Area School Dist.*, 900 F.Supp 706, 713–14 (M.D. Pa. 1995) (finding that a district had not failed to notify parents of their procedural rights under the IDEA where a child was not referred for special education assessment and no such assessment or notification was requested).

12.  Moyer argues, however, that under its Child Find obligations, the District had sufficient notice of his potential disability to require that it to assess whether he was eligible for special education.[74]  See *D.R. v. Antelope Valley Union High Sch. Dist.*, No. CV 10-04751 SJO (MANx), 2010 WL 4262047, *7 (C.D. Cal. Oct. 8, 2010) ("Pursuant to IDEA's 'child find' provision, Defendant has a duty to identify and evaluate children who are suspected of having a qualifying disability within a reasonable time after school officials are placed on notice," citing *Torrance Unified Sch. Dist. v. Magee*, No. CV 07-2164 CAS (RZx), 2008 WL 4906088, *1 n. 1 (C.D. Cal. Nov. 10, 2008)).  Moyer argues as a consequence that the District withheld a notice of procedural safeguards that would have been required had he been assessed for special education under the IDEA's Child Find provisions.[75]

13.  As noted, claims that a school district failed to satisfy its Child Find obligations are subject to the IDEA's two-year statute of limitations.  See *West Chester Area Sch. Dist*, 557 F.Supp.2d at 665; *Council Rock Sch. Dist.*, 2007 WL 3120014 at *2.  Moyer concedes that

---

[73]AR 931.

[74]Brief at 21–22.

[75]*Id.* at 22 ("As a direct result of the District's failure to comply with Child Find, [Moyer's] parents were ignorant of their IDEA rights and incurred substantial costs to help [him] work towards a high school diploma").

his Child Find claim accrued more than two years prior to his request for a due process hearing. Accordingly, Moyer cannot pursue that claim as a predicate to showing a procedural failure by the District excusing application of the limitations period to the claim. To accept such an argument would expand the exception under § 56505(*l*) to such an extent that the limitations provision would be meaningless in most instances. Even if the court were to view such an interpretation as "more equitable, [courts do not] have the authority to 'interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *Garcia v. Brockway*, 526 F.3d 456, 466 (9th Cir. 2008) (discussing the statute of limitations for claims under the Fair Housing Act and quoting *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991)); see also *Miller*, 318 F.Supp.2d at 862 (applying the previous three-year limitations period because "[t]he record supports the [ALJ's] determination that Grant had sufficient knowledge of the relevant facts. Thus, the [ALJ] correctly determined that Grant[']s related claims accrued no later than November 1998. The statute of limitations for requesting a due process hearing with regard to the District's initial assessment of Grant began to run at that time, and any of Grant's claims not within the three-year window was correctly deemed time-barred"). Therefore, the court finds that the ALJ did not err in concluding that Moyer's first three claims as time-barred.

**C.    Whether Moyer's Claims for Denial of a FAPE after September 24, 2006 Fail as a Matter of Law**

14.    The fourth and fifth claims litigated before the ALJ alleged that Moyer was denied a FAPE through November 24, 2008.[76] The claims concerned the two-year period prior to the filing of the due process hearing request – September 24, 2006 to November 24, 2008. These claims are not barred by the statute of limitations. The ALJ determined, however, that Moyer was not entitled to a FAPE during this time period because he had not been

---

[76]AR 1853.

17

1   determined to be eligible for special education services prior to turning nineteen.[77]

2 15. Under 20 U.S.C. § 1412(a)(1)(B)(i), the obligation of educational agencies "to make a free

3   appropriate public education available to all children with disabilities does not apply with

4   respect to children . . . [ages] 18 through 21 in a State to the extent that its application to

5   those children would be inconsistent with State law or practice." Under California law,

6   "'[s]pecial education,' in accordance with [the IDEA], means specially designed

7   instruction, at no cost to the parent, to meet the unique needs of individuals with

8   exceptional needs. . . ." CAL. EDUC. CODE § 56031(a). In defining "Individuals with

9   Exceptional Needs" who qualify for special education services, California Education Code

10   § 56026(c)(4) allows for services to children over nineteen years of age only if the student

11   "enrolled in or [was] eligible for a program under this part or other special education

12   program prior to his or her 19th birthday." See also CAL. EDUC. CODE § 56026(c)(4)(D)

13   ("No local educational agency may develop an individualized education program that

14   extends these eligibility dates, and in no event may a pupil be required or allowed to attend

15   school under the provisions of this part beyond these eligibility dates solely on the basis

16   that the individual has not met his or her goals or objectives").

17 16. Moyer turned nineteen on September 25, 2005. It is undisputed that at that time, he was

18   not enrolled in a special education program, and had not been found eligible for such a

19   program. Accordingly, he was not eligible for special education services under

20   § 56026(c)(4) as of that date.

21 17. Moyer argues, however, that the District should have assessed him and found him eligible

22   for special education under its Child Find obligations prior to September 25, 2005.[78] As

23   noted, however, his claim that the District violated its Child Find obligations prior to his

24   nineteenth birthday is time-barred because Moyer did not request a due process hearing

25   until September 24, 2008, almost three years after his nineteenth birthday. Accordingly,

---

27 [77]AR 1864.

28 [78]Reply at 5–7.

1    this claim cannot serve as the predicate for an argument that Moyer should have been

2    eligible for special education services prior to that time.  The court therefore concludes that

3    the ALJ did not err in finding that Moyer's fourth and fifth claims failed as a matter of

4    law.

### D.    Moyer's Claim That the District Failed to Produce All Educational Records

18.    Moyer also argues the District did not produce all of his educational records in advance of

the administrative hearing and that it destroyed some of the records.  It is not entirely clear

what relief Moyer seeks on this claim.[79]  Under California Education Code § 56504, "[t]he

parent shall have the right and opportunity to examine all school records of his or her child

and to receive copies pursuant to this section and to Section 49065 within five business

days after the request is made by the parent, either orally or in writing.  The public agency

shall comply with a request for school records without unnecessary delay before any

meeting regarding an individualized education program or any hearing . . . and in no case

more than five business days after the request is made orally or in writing."  Educational

agencies are also prohibited from destroying educational records when there is an

outstanding request for them.  33 C.F.R. § 99.10(e).

19.    Moyer's mother requested his educational records in October 2008, after filing her initial

request for a due process hearing.[80]  Although the District produced some records, Moyer

contends others were not provided or were destroyed, citing the testimony of district

personnel that they regularly deleted emails, that nursing records were destroyed, and that

---

[79]Brief at 8–9.  Moyer cites *Scorah v. District of Columbia*, 322 F.Supp.2d 12, 18 (D.D.C. 2004), for the proposition that the court should view all evidence in the light most favorable to the plaintiff based on this alleged failure to provide records.  (Brief at 9).  As noted, however, Moyer has not disputed the ALJ's findings of fact.  In any event, *Scorah* is inapposite because it involved a school district's failure to produce the administrative record of the administrative hearing, not educational records in advance of the administrative hearing.  *Id.*

[80]Brief at 8.

1    they knew of electronic files that were not provided.[81]

2    20.   The District argues that Moyer has waived this claim because he did not raise it at the

3          administrative hearing.[82]   Moyer acknowledges that the issue was not addressed by the

4          ALJ.[83]  The language of the IDEA permits a party aggrieved by an administrative decision

5          "to bring a civil action with respect to the complaint presented pursuant to this section."

6          20 U.S.C. § 1415(i)(2)(A).  "Generally, when administrative proceedings such as due

7          process hearings are available, all issues must be raised at the administrative level to be

8          subject to judicial review."  *Alexis R. v. High Tech Middle Media Arts School*, No.

9          07cv830 BTM (Wmc), 2009 WL 2382429, *4 (S.D. Cal. Aug. 3, 2009) (citing *Portland*

10         *Gen. Elec. Co. V. Bonneville Power Admin.*, 501 F.3d 1009, 1024 (9th Cir. 2007)).

11         Failure to raise an issue during the administrative hearing, however, is not necessarily fatal

12         to the availability of subsequent judicial review.  See *Johnson v. Dir., Office of Workers'*

13         *Comp.*, 183 F.3d 1169, 1171 (9th Cir. 1999) (reviewing a supplemental fee issue not

14         raised before administrative law judge since review did not usurp the Benefits Review

15         Board's expertise or prerogative to correct its own mistakes).  "[I]n certain cases, [a

16         plaintiff] may bypass the administrative process to seek judicial relief."  *Pihl v. Mass.*

17         *Dept. of Educ.*, 9 F.3d 184, 190 (1st Cir. 1993); see also *Honig v. Doe*, 484 U.S. 305,

18         327 (1988) ("[P]arents may bypass the administrative process where exhaustion would be

19         futile or inadequate").  Moyer argues that potential problems concerning the production

20         of his educational records did not become apparent until the administrative hearing was

21         underway, and that this prevented the issue from being raised or addressed.  See CAL.

22         EDUC. CODE § 56505(e)(6) (providing that a party to a due process hearing has "[t]he right

23         to be informed by the other parties to the hearing, at least 10 days prior to the hearing, as

24         to what those parties believe are the issues to be decided at the hearing and their proposed

25   _____

26   [81]*Id.*

27   [82]Response at 4.

28   [83]Reply at 1.

1    resolution of those issues.[84]

2    21.   Whether or not Moyer properly exhausted administrative remedies concerning this issue,

3          the evidence he cites fails to show that he was denied any records.  Nor does it suggest a

4          basis for reviving his claims.  The testimony cited by Moyer indicates that emails and

5          nursing records related to his attendance at Wilson High School from 2002 to 2003 were

6          deleted or destroyed pursuant to common practice, long before they were requested in

7          2008.[85]  The only "record" identified as not having been provided was a computer grade

8          file that showed Moyer's biology grade in 2003.[86]  Because Moyer received this grade in

9          other forms both in 2003 and in 2008, the testimony does not indicate that records were

10         improperly withheld.

11   22.   More significantly, the alleged failure to produce these records does not support waiving

12         the limitations period.  Moyer does not argue this crucial point directly, and the court has

13         found no case law suggesting that failure to provide educational records when requested

14         after the close of the limitations period warrants waiving the statute of limitations.  Moyer

15         cites *Amanda J.*, 267 F.3d 877, for the proposition that "[w]here a local educational

16         agency has failed to disclose necessary information to a parent of a disabled child . . . [a]

17         court may award compensatory education beyond the statute of limitations."[87]  *Amanda J.*,

18         however, did not address the statute of limitations.  The court there held that compensatory

19

20   [84]Reply at 2.

21   [85]AR 1084, 1458–59.

22
23   [86]AR 1255–58.

24   [87]Brief at 22.  Moyer also cites *Draper v. Atlanta Independent School System*, 518 F.3d
     1275 (11th Cir. 2008).  In *Draper*, the Eleventh Circuit found that the IDEA's statute of
25   limitations did not bar a claim filed in 2004 because the child's "family did not have the facts
     necessary to know that [he] had been injured by his misdiagnosis and misplacement until they
26   received the results of his evaluation in 2003."  *Id.* at 1288.  *Draper* is inapposite because
     Moyer's parents were fully aware of his medical condition and the educational accommodations
27   Wilson provided him.  Indeed, Moyer does not contest the ALJ's finding that his claims accrued
28   in November 2003.

education was appropriate because the child's parents had not been given records indicating that she suffered from autism in advance of the development of an ultimately ineffective IEP.  *Id*. at 894 ("We hold that, by failing to disclose Amanda's full records to her parents once they were requested, in violation of 20 U.S.C. § 1415(b)(1)(A), the District denied Amanda a FAPE.  The IEP team could not create an IEP that addressed Amanda's special needs as an autistic child without knowing that Amanda was autistic.  Even worse, Amanda's parents were not informed of the possibility that their daughter suffered from autism – a disease that benefits from early intensive intervention – despite the fact that the district's records contained test results indicating as much").  As noted, Moyer does not dispute that his parents were aware of the facts underlying his claims in November 2003, as the ALJ found.  Accordingly, *Amanda J*. does not suggest a basis for relief.

23.   Finally, the request for records here was made almost five years after Moyer's parents knew the facts concerning his potential disability.  This is long past the limitations period for claims under the IDEA.  Accordingly, the District's failure to produce all of Moyer's educations records – even had it been proved – would not support waiving the limitations period because Moyer's parents did not require the records to understand his potential disability and to request a due process hearing.  Moyer's claim that the District did not provide all requested records is unsupported and does not provide a basis for overturning the ALJ's decision as a rseult

E.     **The District's Request for Attorneys' Fees**

24.    The District seeks an award of attorneys fees against Moyer's counsel, arguing that the appeal was frivolous and without foundation.  See 20 U.S.C. § 1415(i)(3)(B)(i)(II) (providing that the court may at its discretion award reasonable attorneys' fees "to a prevailing party who is a State educational agency or local educational agency against . . . against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation").[88]  As conceded by the District, however,

---

[88]Response at 22–23.

there is no precedent in the Ninth Circuit that specifically addresses the statutory exceptions to the IDEA's statute of limitations.[89]  Because the ALJ's decision largely turned on that issue, the court cannot find that an appeal of his decision was frivolous, unreasonable, or without foundation.

25.  Indeed, the court concurs with the ALJ's finding that it was reasonable for Moyer's parents to seek assistance with costs associated with helping their son address what now appears to be a brain injury.[90]  While the statutory period for seeking such assistance has closed, the court finds that awarding attorneys' fees for time spent defending the appeal would not be appropriate.

### III.  CONCLUSION

For the reasons stated, the court affirms the ALJ's conclusions in all respects.  It denies the District's request for attorneys' fees.

DATED: January 24, 2013

_Margaret M. Morrow_

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[89]*Id.* at 13.

[90]AR 1864.

23